FILED
2013 Jan-08  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JOHN ALBERT VEAL, JR., on behalf
of himself and all others similarly situated.

      PLAINTIFF,

v.                        CASE NO. 2:12-CV-801-IPJ

CITRUS WORLD, INC.,

      DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's motion for leave to amend complaint (doc. 36), defendant's motion to dismiss the second amended complaint (doc. 37), the plaintiff's response to the motion to dismiss (doc. 41), the defendant's response to the plaintiff's motion to amend (doc. 42), the defendant's reply to the plaintiff's response in opposition to the motion to dismiss (doc. 44), and the plaintiff's reply in support of his motion to amend (doc. 45). Having considered the motions, responses, and the allegations of the plaintiff's complaint, as amended to date, the court finds as follows:

## FACTUAL BACKGROUND

The various amended complaints assert that defendant, maker of Florida's Natural Orange Juice, manipulates the flavor of its orange juice through the addition of various compounds to mask the taste that results from extensive processing. The

plaintiff complains that although defendant markets its orange juice as "100% orange juice," it is heavily processed, stored, and flavored before reaching market shelves for purchase by consumers. *See e.g.*, second amended complaint, ¶¶ 8, 10-13, 11. Plaintiff blames some of this processing on the pasteurization process, which may create off-flavors or aromas. *Id*., ¶¶ 29-30, 44. He asserts that "[w]ithout the addition of flavoring and aroma, Florida's Natural would not only be unappealing to consumers, but also nearly undrinkable." *Id*., ¶ 40. According to plaintiff, the flavorings thus added are "unnatural, scientifically produced" and "designed in laboratories by chemists, food scientists, and flavorists." *Id.*, ¶ 42.

The plaintiff asserts that because the label does not mention that flavoring and aroma are added, "reasonable consumers desirous of 100% pure and fresh squeezed orange juice have been deceived into purchasing Florida's Natural..." Second amended complaint, ¶ 77. The plaintiff does not aver that he personally has ever consumed Florida's Natural orange juice or that he suffered any ill health effects from consumption of the same, but rather alleges only that he purchased it, repeatedly, over the six years preceding the first complaint. Based on these allegations, the plaintiff sues on behalf of a class for breach of express warranty and breach of contract.[1]

---

[1] In his motion to file a third amended complaint, the plaintiff seeks to add numerous individuals from numerous other states, create state wide classes and add numerous claims which arise under other states laws and have no relationship to Alabama whatsoever. While venue exists in the Northern District of Alabama for the Alabama claims and Alabama citizen, the court sees no

## STANDARD OF REVIEW

In reviewing motions to dismiss, the court must "accept the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir.2004); citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003).  See also *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).  A court should not dismiss a suit on the pleadings alone "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.,* 144 F.3d 732, 735 (11th Cir.1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

A motion to dismiss is granted "only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Sonyika*, 394 F.3d at 1338, citing *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir.2004)(*quoting Conley v.*

---

advantage to a California class bringing claims under California law in the Northern District of Alabama, solely because Mr. Veal lives here.   Clearly, a citizen of New Jersey, Illinois, or California who purchased orange juice in those respective states, suffered no injury in Alabama. Defendant is not located in Alabama.  Additionally, the plaintiff has already attempted to bring his other orange juice litigation to Alabama to join this action and been turned down by the Judicial Panel on Multidistrict Litigation. *See In re Tropicana Orange Juice Marketing and Sales Practices*, 867 F.Supp.2d 1341 (U.S.Jud.Pan.Mult.Lit.2012).

The court notes that the plaintiff has two other cases also pending in the Northern District of Alabama with substantially identical claims against other manufacturers of orange juice.  In each of those cases, like the one before this court, the plaintiff has filed motions to amend each time a motion to dismiss is filed.  See 2:12-cv-805-RDP and 2:12-cv-806-RDP.

*Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  *See also Jackson*

*v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11ᵗʰ Cir.1994)(stating that the court

"must accept as true the facts stated in the complaint and all reasonable inferences

therefrom").

## LEGAL ANALYSIS

In essence, the plaintiff complains that bottled orange juice is not fresh-

squeezed orange juice.  He offers no explanation as to why he does not squeeze his

own oranges if he truly seeks fresh squeezed orange juice.  The court offers this

observation because the essence of his claim concerns the question of how much

processing is permissible in a product labeled as "fresh" "100%" or "pure."[2]

Specifically, the plaintiff alleges that he has "in the last six years purchased

orange juice products produced, marketed and sold by the defendant as pure 100%

orange juice."  Amended complaint, ¶ 89.  He states that had he "known the truth

about the defendant's orange juice products, he would not have made his purchase

choices, and would not have paid the higher value charged for the alleged quality of

Florida's Natural's orange juice."  *Id.,* at ¶ 91.  Based on these facts, plaintiff seeks

---

[2]Exhibit B to plaintiff's second amended complaint contains pictures of the packaging at issue.  The label in question states that it is "squeezed from our fresh oranges" and "not from concentrate."  It contains language that it is "100% Pure Florida Orange Juice" and that it is "pasteurized."  The label also reflects that it is "100% orange juice" and "100% Florida."  The ingredients are listed as "pasteurized orange juice."  Because the plaintiff relies on and quotes from this label, the court may consider the provided labels in addressing the defendant's motion to dismiss.  *See e.g., Young v. Johnson & Johnson,* 2012 WL 1372286, * 3 n.3 (D.N.J.2012).

to represent a nationwide class of individuals who similarly bought defendant's orange juice, apparently without concern as to whether such other individuals were similarly misled. *Id.,* at ¶ 93. The plaintiff states claims on behalf of this proposed class for breach of express warranty and breach of contract. The plaintiff seeks both compensatory and injunctive relief.

The defendant asserts that the plaintiff lacks standing because he alleges no actual or concrete  injury; that the complaint is preempted by the FDA regulations, and that the plaintiff does not state claims for breach of contract or breach of express warranty. The plaintiff responds that his injury is the purchase of orange juice believing it to be something that it was not. However, the plaintiff does not allege any claim under the Alabama Deceptive Trade Practices Act.[3] The court considers each of the defendant's bases for its motion to dismiss in turn.

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Swann v. Sec'y*, 668 F.3d 1285, 1288 (11th Cir.2012) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir.2005) (alterations and internal quotation marks omitted)). Standing is

---

[3]Although the plaintiff claims that the defendant markets this orange juice as "fresh squeezed orange juice," the label actually states that the orange juice is "squeezed" from "fresh oranges."

jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1). *See United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

The defendant asserts that plaintiff has not alleged an injury in fact, beyond his purchase of Florida's Natural orange juice.  For standing, the plaintiff must establish "three elements: an actual or imminent injury, causation, and redressability." *Swann v. Secretary, Georgia*, 668 F.3d 1285, 1288 (11th Cir.2012) (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla*., 641 F.3d 1259, 1265 (11th Cir.2011)). Because this case is styled as a class action, the named plaintiff must have standing before the court can certify a class.  *See Vega v. T–Mobile USA, Inc*., 564 F.3d 1256, 1265 (11th Cir.2009).  *See also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir.2008) ("To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members.").

The analytical framework for resolving standing issues requires consideration of both "constitutional" and "prudential" requirements for standing. *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1038 (11th Cir.2008) (citing *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir.1994) (en banc)). "The constitutional requirements derive from Article III's limitation of federal jurisdiction to situations

6

where a justiciable 'case or controversy' exists between the litigants." To have standing, a plaintiff must establish (1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling. *See e,g., Young Apartments*, 529 F.3d at 1038. "If a plaintiff cannot satisfy these constitutional standing requirements, the case lies outside the authority given to the federal courts by Article III and must be dismissed." *Id.*

> In addition to the constitutional requirements of Article III, the Supreme Court has also instructed courts to consider three prudential principles when weighing whether judicial restraint requires the dismissal of a party's claims. *Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197; *Bischoff v. Osceola County*, 222 F.3d 874, 883 (11th Cir.2000). The Eleventh Circuit has summarized these prudential considerations as:
>
> > 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue;
> >
> > 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and
> >
> > 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.
>
> *Harris*, 20 F.3d at 1121 (quoting *Saladin*, 812 F.2d at 690).

*Young Apartments, Inc.*, 529 F.3d at 1039.

Here, the plaintiff alleges that his injury was the actual purchase of orange juice. However, he does not explain how buying packaged orange juice, when he wanted packaged orange juice, injured him.[4] The plaintiff states both that he either (1) "purchased products [he] would not have purchased" or (2) "paid more than [he] otherwise would have been wiling to pay" if the product was not mislabeled. Second amended complaint, ¶ 13. However, he does not state a claim for any deceptive trade practice in the labeling. Rather, he sues for breach of contract and breach of express warranty.[5] He asserts that in taking compounds from orange juice and manipulating them to create a better tasting orange juice post-pasteurization process, the defendant should not label the contents of its orange juice as "orange juice." Plaintiff's response (doc. 41) at 6. Somewhat contradictory to his claims, the plaintiff recognizes in his amended complaint that "[l]arge productions of orange juice like the defendant's cannot be made fresh because is has a short shelf-life." Amended complaint, ¶ 9.

---

[4]The plaintiff makes much ado about believing the packaged containers of orange juice contained "fresh squeezed" orange juice. As a matter of common sense, whatever is in a container on a store shelf with an expiration date some weeks hence cannot contain "fresh" anything. Even if the product began its life as "fresh squeezed orange juice," common sense dictates that by the time the same makes its way to a grocery store and sits on a shelf waiting purchase, it is no longer "fresh."

[5]For purposes of demonstrating an actual injury, the plaintiff does not allege how much he personally paid for Florida's Natural orange juice, how much this amount was over what he was willing to pay for it, how many times he has purchased such orange juice, or when the last time he bought this brand of orange juice believing it to be something it was not.

Despite plaintiff's numerous allegations as to the wrongfulness of the orange juice industry, the court finds the plaintiff has failed to state an actual, concrete injury.  He states he did not know store bought orange juice was not fresh squeezed, but nowhere alleges any harm from its purchase or consumption.  He does not even claim that upon learning packaged orange juice was not truly "fresh", he now must squeeze his own oranges.  In other words, despite plaintiff's protestations that he did not receive the product he believed he was purchasing, he makes no allegation that he has stopped purchasing what he considers to be an inferior product in favor of purchasing what he actually sought, which is apparently unpasteurized fresh squeezed orange juice.  Rather, he compares the cost of defendant's orange juice to an orange juice concentrate, and alleges the difference between them is proof of his loss.

Even taking plaintiff's conclusory and contradictory allegations as true, they do not rise to the level of a "concrete and particularized" injury as opposed to a "conjectural or hypothetical" one.  Plaintiff does not allege what the "higher value charged" was or what the orange juice supposedly "would have been worth" if it was "as warranted." He does not allege what products he actually bought, when he bought them, or where he bought them, much less what he paid.[6]   Taken as a whole, the

---

[6]Somewhat comically, the plaintiff asserts in his response that he "has alleged the requisite injury to give rise to standing in this case.  Plaintiff specifically alleges that he purchased Citrus World's Florida Natural product 'at various times' from several different stores."  Plaintiff's response (doc. 41) at 4.  The court suspects that the defendant is seeking a more specific description

9

amended complaints do no more than "raise[] abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches..." *Young Apartments, Inc.*, 529 F.3d at 1039 (other citations omitted).

In an attempt to save his claim and demonstrate an injury worthy of standing, the plaintiff argues that he did not receive the "benefit of the bargain" of what he believed he was actually purchasing.  Many courts have held that "benefit of the bargain" theories of injury like plaintiff's, where a plaintiff claims to have paid more for a product than the plaintiff would have paid had the plaintiff been fully informed (or that the plaintiff would not have purchased the product at all), do not confer standing.[7]

For example, in *In re Fruit Juice Products Marketing and Sales Practices Litigation*, 831 F.Supp.2d 507 (D. Mass. 2011), the plaintiffs alleged that the defendant manufacturers did not disclose on their product labels the presence of lead in their juice and other fruit products and that the plaintiffs would not have bought

---

than "various" times and "several different stores."

[7]The plaintiff alleges he was charged more for orange juice and that "he paid a higher price than he would have for lower quality orange juice..."  Plaintiff's response, at 25.  Nowhere does plaintiff allege that he wanted fresh squeezed orange juice for higher nutritional value that he did not receive or for better taste that he did not receive.  In other words, while plaintiff repeatedly asserts he did not receive the "benefit of his bargain" he never alleges what that benefit was or of what he was deprived.  He paid for orange juice mass produced and supplied to grocery stores all over the country, and that is exactly what he received.  *See e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir.2009) ("The plaintiffs' alleged injury in fact is premised on the loss of a "safety" benefit that was not part of the bargain to begin with.").

the products had they known about the lead. *Id.* at 509. On a motion to dismiss, the

court concluded that the "Plaintiffs fail[ed] to allege any actual injury caused by their

purchase and consumption of the products." *Id.* at 510. The court observed:

> The fact is that Plaintiff paid for fruit juice and they received fruit juice,
> which they consumed without suffering harm. The products have not
> been recalled, have not caused any reported injuries, and do not fail to
> comply with any federal standards. The products had no diminished
> value due to the presence of lead. Thus Plaintiffs received the benefit of
> the bargain, as a matter of law, when they purchased these products.

*Id.* at 512.   *See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 961-62 (9th Cir. 2009)

(noting potential for hearing loss from improper iPod use was not sufficient to state

an injury for standing); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-21 (5th

Cir.2002).[8]

_____

[8]The court in *Rivera* applauded the plaintiff's for not arguing breach of contract ("-likely a
smart decision, given that there was no contract").  The court continued that

> Instead, they invoke *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir.
> 2001), a bold move given that *Coghlan* explicitly distinguishes valid, contract law
> suits from the "no-injury products liability law suit" plaintiffs bring.

> The *Coghlan* plaintiffs had contracted to buy an all fiberglass boat but instead
> received a less valuable, wood-fiberglass hybrid. They sued for breach of contract,
> requesting damages equal to the difference in value between what they were
> promised (an all fiberglass boat) and what they received (the fiberglass-wood
> hybrid). In holding that the Coghlans had suffered an injury, we explained that

>> [t]he key distinction between [the Coghlans'] case and a "no-injury"
>> products liability suit is that the Coghlans' claims are rooted in basic
>> contract law rather than the law of product liability: the Coghlans
>> assert they were promised one thing but were given a different, less
>> valuable thing. The core allegation in a no-injury product liability
>> class action is ... the defendant produced or sold a defective product
>> and/or failed to warn of the product's dangers.

*Id.* at 455 n. 4.

Another court to consider the "benefit of the bargain" theory of standing considered and dismissed the plaintiff's claims centered around learning that Froot Loops contained no real fruit.  The court held:

> Plaintiffs' allegation that the cereal pieces themselves resemble fruit is not rational, let alone reasonable. The cereal pieces are brightly colored rings, which in no way resemble any currently known fruit. As a matter of law, no reasonable consumer would view them as depicting any fruit. Third, the small "vignettes" of fruit surrounding the "NATURAL FRUIT FLAVORS" banner could not mislead the reasonable consumer. For one, the depiction of fruit on a product label is not a specific affirmation that a products contains *any fruit at all*. FDA regulations permit illustrations of fruit on product label to indicate that product's "characterizing flavor," even where the product contains no ingredients derived from the depicted fruit. *See* 21 C.F.R. § 101.22(i)(l) (i-iii). Froot Loops contains the "NATURAL FRUIT FLAVORS" of lime, orange, lemon, cherry, raspberry, and blueberry, as disclosed in the ingredients panel, rendering any depiction of fruit "vignettes" on the box entirely accurate and permissible under FDA regulations.

*McKinnis v. Kellogg USA*, 2007 WL 4766060, *4 (C.D.Cal.2007)[9] (italics in original).

---

Even if we were to ignore the fact that plaintiffs have no contract, the general principles they invoke do not help them. By plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that-the benefit of her bargain.

*Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315, 320-321 (5th Cir.2002).  Similarly, here the plaintiff paid for orange juice, and received orange juice.  Unrecognized by plaintiff is he would have had to pay more for a product that was truly fresh squeezed orange juice.

[9]Not surprisingly, a claim against the manufacturer of Cap'n Cruch Crunchberries for not containing real fruit faired no better.  *See Sugawara v. Pepsico, Inc*., 2009 WL 1439115 (E.D.Cal.2009).

Similarly, in *Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J.2012)

the court stated that

> Plaintiff's contention that he satisfies the injury-in-fact requirement
> because he alleges that he was deprived of the "benefit of the bargain,"
> received a product of inferior quality, and paid a premium price for
> Benecol because he believed "that it was healthy, when in fact it was not
> because it contained dangerous partially hydrogenated oils" is
> unavailing .... His purchases of Benecol were not made pursuant to a
> contract and, beyond relying on his own subjective belief as to the
> unhealthy nature of even small amounts of trans fats, he does not set
> forth allegations as to how he paid a premium for Benecol or received
> a product that did not deliver the advertised benefits. *See Koronthaly*,
> 374 F. App'x at 259 (rejecting plaintiff's argument that injury-in-fact was
> loss of "benefit of the bargain," as her purchases were not made
> pursuant to a contract); *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315,
> 319–21 (5th Cir.2002) (rejecting "benefit of the bargain" argument and
> dismissing for lack of standing); *Medley v. Johnson & Johnson*, 2011
> WL 159674, at *2 (D.N.J. Jan.18, 2011) (finding that plaintiffs lacked
> standing where the economic injury for which they sought redress was
> the price they paid for shampoo and no adverse health consequences
> were pled). Indeed, as established above, Plaintiff's complaint amounts
> to no more than subjective allegations that the presence of any amount
> of trans fat and partially hydrogenated oils renders Defendant's health
> claims misleading and Benecol unhealthy. Such allegations, however,
> are insufficient to establish injury-in-fact, particularly in light of
> Plaintiff's failure to allege any adverse health consequences, the
> consistency of Defendant's claims with relevant FDA regulations, and
> the disclosures made on Benecol's packaging indicating the presence of
> small amounts of partially hydrogenated oils and trans fats. *See, e.g.,*
> *Lujan*, 504 U.S. at 560–61 (an injury-in-fact must be "(a) concrete and
> particularized, and (b) actual or imminent, not conjectural or
> hypothetical"); *Koronthaly*, 374 F. App'x at 259 (finding that plaintiff's
> subjective allegations that trace amounts of lead in lipsticks is
> unacceptable to her do not constitute an injury-in-fact sufficient to
> confer Article III standing). Accordingly, Plaintiff lacks standing to
> pursue this action.

*Young v. Johnson & Johnson,* 2012 WL 1372286, *4 (D.N.J.2012).

The court finds plaintiff's allegations akin to those in *Young v. Johnson & Johnson*. Plaintiff has not alleged that he suffered any actual injury, economic or otherwise, from consuming defendant's orange juice. Because he has failed to allege the existence of a "concrete and particularized" injury, plaintiff lacks standing.

Unlike the cases relied on by plaintiff, the plaintiff here does not assert a false advertising or misrepresentation claim. In *Delacruz*, where the court found an injury by plaintiffs who alleged they would not have purchased a product but for defendant's misrepresentation, the plaintiffs brought claims for fraud, false advertizing, misrepresentation, and others. *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243, *11-12 (N.D.Cal.2012). Similarly, the issue of standing in *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011),[10] was based on claims for false advertising and unfair competition. The same is true for *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818, *3 (C.D.Cal.2012) (concerning claim of false representation that product was "all natural").

As to plaintiff's claims for injunctive relief, the court finds cases such as *Robinson v. Hornell Brewing Co.*, 2012 WL 1232188 (D.N.J. 2012), instructive. There, in the context of a plaintiff bringing a class action suit against Arizona Brand

---

[10]Although cited by plaintiff, this opinion was vacated by the Ninth Circuit Court of Appeals in its entirety.

beverages, which claimed to be "all natural", the court noted that unless the named plaintiff had plans to purchase the product in the future, he could not pursue injunctive relief on behalf of a class. *Id*., at *4-5 ("This Court concludes that merely seeing a label that Plaintiff believes is incorrect or that he believes could be misleading to others is not the kind of concrete adverse effect or injury necessary to create a cognizable case or controversy required by Article III.  Similarly, Plaintiff's apparent concern that he may still, perhaps accidentally, purchase Defendants' products is too hypothetical or conjectural to create standing to pursue injunctive relief on behalf of the proposed class.").

The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

These very flaws plague the plaintiff's case here.  He does not allege how he will suffer a future injury, or even to what extent he has suffered a past injury by purchasing packaged orange juice from a store which was, in fact, not fresh squeezed orange juice.  Thus, even assuming that the plaintiff has alleged that he suffered an

actual injury, and sufficiently alleged that the injury is fairly traceable to the challenged conduct of the defendant, he cannot satisfy the third prong of the standing analysis, that being that his injury is likely to be redressed by a favorable ruling.

The plaintiff complains that even though the FDA does require that defendant label its product as "pasturized orange juice," all of defendant's other representations are voluntary, and thus not within the protections of the FDA. Plaintiff's response, at 15-16. However, the plaintiff does not dispute that the defendant's product is "squeezed from our Florida oranges" or "100% orange juice." Rather, he complains that the squeezing and pasteurization is performed on a massive scale, and that the pasteurization process destroys the flavor, causing ingredients already present in orange juice to be replaced in the marketed juice. However, the fact that the plaintiff may have believed defendant hired individuals to hand squeeze fresh oranges one by one into juice cartons, then boxed up and delivered the same all over the country does not translate into a concrete injury to plaintiff upon his learning that beliefs about commercially grown and produced orange juice were incorrect.[11]

---

[11]Oddly, nowhere does plaintiff assert when or how he learned the truth about commercial orange juice. However, the references in the second amended complaint are to articles from 1999 (amended complaint, ¶ 9); 2009 (amended complaint, ¶ 21); 2004 (amended complaint, ¶ 33); and 2003 (amended complaint, ¶ 84). Thus, plaintiff could have learned the truth about the orange juice industry as much as thirteen years prior to filing his complaint.

Because the court finds the plaintiff lacks standing to pursue his claims, the court does not delve into the extensive FDA Regulations governing orange juice, other than to note that defendant labels its orange juice in accordance with FDA regulations.[12]  The relevant regulations state:

> a) Orange juice is the unfermented juice obtained from mature oranges of the species Citrus sinensis or of the citrus hybrid commonly called "Ambersweet" ( 1/2 Citrus sinensis X 3/8 Citrus reticulata X 1/8 Citrus paradisi (USDA Selection:1–100–29: 1972 Whitmore Foundation Farm)). Seeds (except embryonic seeds and small fragments of seeds that cannot be separated by current good manufacturing practice) and excess pulp are removed. The juice may be chilled, but it is not frozen.
>
> (b) The name of the food is "orange juice". The name "orange juice" may be preceded on the label by the varietal name of the oranges used, and if the oranges grew in a single State, the name of such State may be included in the name...

21 C.F.R. § 146.135.  Even more specifically, the FDA has defined "pasturized orange juice" as

> a) Pasteurized orange juice is the food prepared from unfermented juice obtained from mature oranges as specified in § 146.135, to which may be added not more than 10 percent by volume of the unfermented juice obtained from mature oranges of the species Citrus reticulata or Citrus reticulata hybrids (except that this limitation shall not apply to the hybrid species described in § 146.135). Seeds (except embryonic seeds and small fragments of seeds that cannot be separated by good

---

[12]The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 et seq., and the implementing regulations of the Food and Drug Administration ("FDA"), 21 C.F.R. §§ 1.1 et seq., govern food and beverage labeling.  The Federal Food, Drug, and Cosmetic Act (FDCA) empowers the Food and Drug Administration (FDA) to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

manufacturing practice) are removed, and pulp and orange oil may be adjusted in accordance with good manufacturing practice. If the adjustment involves the addition of pulp, then such pulp shall not be of the washed or spent type. The solids may be adjusted by the addition of one or more of the optional concentrated orange juice ingredients specified in paragraph (b) of this section. One or more of the optional sweetening ingredients listed in paragraph (c) of this section may be added in a quantity reasonably necessary to raise the Brix or the Brix-acid ratio to any point within the normal range usually found in unfermented juice obtained from mature oranges as specified in § 146.135. The orange juice is so treated by heat as to reduce substantially the enzymatic activity and the number of viable microorganisms. Either before or after such heat treatment, all or a part of the product may be frozen. The finished pasteurized orange juice contains not less than 10.5 percent by weight of orange juice soluble solids, exclusive of the solids of any added optional sweetening ingredients, and the ratio of the Brix hydrometer reading to the grams of anhydrous citric acid per 100 milliliters of juice is not less than 10 to 1.

(b) The optional concentrated orange juice ingredients referred to in paragraph (a) of this section are frozen concentrated orange juice as specified in § 146.146 and concentrated orange juice for manufacturing as specified in § 146.153 when made from mature oranges; but the quantity of such concentrated orange juice ingredients added shall not contribute more than one-fourth of the total orange juice solids in the finished pasteurized orange juice.

(c) The optional sweetening ingredients referred to in paragraph (a) of this section are sugar, invert sugar, dextrose, dried corn sirup, dried glucose sirup.

(d)     (1) The name of the food is "Pasteurized orange juice". If the food is filled into containers and preserved by freezing, the label shall bear the name "Frozen pasteurized orange juice". The words "pasteurized" or "frozen pasteurized" shall be shown on labels in letters not less than one-half the height of the letters in the words "orange juice".

18

(2) If the pasteurized orange juice is filled into containers and refrigerated, the label shall bear the name of the food, "chilled pasteurized orange juice". If it does not purport to be either canned orange juice or frozen pasteurized orange juice, the word "chilled" may be omitted from the name. The words "pasteurized" or "chilled pasteurized" shall be shown in letters not less than one-half the height of the letters in the words "orange juice".

21 CFR § 146.140.

The above descriptions clearly encompass the orange juice about which the plaintiff here complains. Specifically, the regulatory definition of pasteurized orange juice contemplates processing the orange juice through manufacturing practice. For example, although the plaintiff's complaint is rife with allegations of manipulation of orange oil, the above regulation clearly states that " pulp and orange oil may be adjusted in accordance with good manufacturing practice." It also states that pasteurized orange juice is treated with heat. The regulatory description also contemplates the addition of "optional concentrated orange juice ingredients," which may be used to adjust the solids in the orange juice and "optional sweetening ingredients." *Id*., § 146.140(a), (c).

Thus, by its very definition, pasteurized orange juice is orange juice (1) that has been processed and treated with heat, (2) in which the "pulp and orange oil may [have] be[en] adjusted in accordance with good manufacturing practice," and (3)

which may have been "adjusted" by the addition of concentrated orange juice ingredients or sweeteners. *Id*. § 146.140(a)-(c).

Clearly, the defendant is selling pasturized orange juice while labeling it "pasturized orange juice." Although the plaintiff objects to such labeling, in the light most favorable to the plaintiff, he purchased a product labeled as pasturized orange juice and now complains that it was pasturized and not what he believed he was buying. See e.g., *In re PepsiCo, Inc., Bottled Water Marketing & Sales Practices Litig*., 588 F. Supp. 2d 527, 537 (S.D.N.Y.) (granting motion to dismiss state law claims alleging mislabeling of bottled water on preemption grounds because bottled water label "complies with the FDCA's requirements").

The FDA regulations for labeling of foods, beginning with 21 C.F.R. § 101.3 (a), provide: "The principal display panel of a food in package form shall bear as one of its principal features a statement of the identity of the commodity." Thus, § 101.30(a) expressly requires defendant to label this product with its standard of identity, which is pasteurized orange juice. The general requirement is that any beverage containing fruit juice must declare the percentage of the beverage that is juice on the label. *Id.* § 101.30(b)(1). Specifically, for not from concentrate juices, § 101.30(i) explicitly states that they "shall be considered to be 100 percent juice and shall be declared as '100 percent juice.'" Thus, defendant labeled its orange juice as

100% orange juice because the FDA mandates it be so labeled. Additionally, because

it is 100% orange juice, the FDA permits the label to include the word "pure." "A

beverage required to bear a percentage juice declaration on its label, that contains less

than 100 percent juice, shall not bear any other percentage declaration that describes

the juice content of the beverage in its label or in its labeling (e.g., '100 percent

natural' or '100 percent pure')." 21 C.F.R. § 101.30(l).

Turning back to the plaintiff's claims, he asserts that defendant is liable under

Alabama warranty and contract law for labeling its pasteurized, not from concentrate

orange juice as "100% orange juice" and "pure."[13] *See e.g.*, plaintiff's response at 16.

As set forth above, however, defendant's use of those labels is either required by

federal law, in the case of "100% orange juice," or otherwise permitted by federal

law, in the case of "pure."

In extensively regulating the labeling of foods and beverages, the FDCA
and its implementing regulations have identified the words and

---

[13]In his response, the plaintiff asserts that his complaint "clearly and unambiguously alleges
that Citrus World conceals all of this chemical manipulation from consumers such as the plaintiff.
The only ingredient listed on the label is orange juice." Plaintiff's response, at 6. The court notes
plaintiff has not brought a claim for fraud, or deceptive trade practices. Additionally, nowhere
does the plaintiff allege how or when he uncovered this concealment of chemical manipulation from
consumers such as the plaintiff.

Similarly, the plaintiff asserts his claims fall into two categories: (1) those concerning
misleading representations that Citrus World has voluntarily added to its product that are not
regulated by the FDA, and (2) those concerning representations that are governed by the FDA.
Plaintiff's response at 12-13. That plaintiff also argues that he does not seek to enforce FDA
regulations, but rather sues because "Citrus World's use of these representations are misleading
under state law." Plaintiff's response at 21. The court notes yet again that no claim for
misrepresentation has been brought against the defendant.

statements that must or may be included on labeling and have specified how prominently and conspicuously those words and statements must appear. *See, e.g.*, 21 U.S.C. § 343(f), (i); 21 C.F.R. § 102.33(c), (d). These provisions ensure that statements are presented on labels in such a way "as to render [them] likely to be read and understood by the ordinary individual." 21 U.S.C. § 343(f).

*Pom Wonderful LLC v. Coca-Cola Co.,* 679 F.3d 1170, 1177 (9th Cir.2012).  The

Court in *Pom Wonderful*

> was "primarily guided" in its decision by "Congress's decision to entrust matters of juice beverage labeling to the FDA and by the FDA's comprehensive regulation of that labeling." *Pom* at 1178. The court then made clear that, because it "lack[ed] the FDA's expertise in guarding against deception" in the food labeling context, "the appropriate forum for Pom's complaints is the FDA." *Id*. at 1178 (internal quotations and brackets omitted).
> ....
> The *Pom* court emphasized that issues of beverage labeling have been entrusted by Congress to the FDA, pursuant to the FDCA (and its related regulations), and that "for a court to act when the FDA has not—despite regulating extensively in this area—would risk undercutting the FDA's expert judgments and authority." *Pom* at 1177.

*Astiana v. Hain Celestial Group, Inc*., 2012 WL 5873585, *2 (N.D.Cal.2012).

Similarly, the court in *Hairston v. South Beach Beverage Co., Inc*., 2012 WL

1893818, * 3 (C.D.Cal.2012), concluded that

> Plaintiff cannot avoid preemption of these claims by arguing that his claim relates solely to Defendants' "all natural" representations and that he included his fruit name and vitamin name claims only as support for his "all natural" claim. Plaintiff's argument would effectively allow Plaintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes avoiding a patchwork of different state standards. *See, e.g., Ries v. Hornell*, 2011

WL 1299286 (N.D.Cal. Apr. 4, 2011) (holding that while "all natural" claim was not preempted, federal law preempted the related "fruit name" claim where plaintiffs challenged "all natural" labeling as false because of product's FDA-compliant use of fruit names).

That court further noted that "Lifewater does not use the "all natural" language in a vacuum, and, thus, it will be impossible for Plaintiff to allege how the "all natural" language is deceptive without relying on the preempted statements regarding fruit names and vitamins." *Id.*, at *4.[14]

Having considered the foregoing, the court returns to plaintiff's claim that he purchased orange juice based on an express warranty that said product was orange juice, but it was not the orange juice he intended to purchase because it was not fresh squeezed orange juice, although said orange juice was labeled as "pasturized orange juice." The court finds such an argument lands directly back to failing to allege a concrete injury sufficient for standing.

Turning to the plaintiff's motion to amend his complaint for a fourth time, the court recognizes that leave to amend generally should be granted unless amendment would be futile or when it is sought in bad faith. See *Burns v. Winnebago Industries, Inc.*, 2012 WL 4839271, 1 (11th Cir.2012); *Burger King Corp. v. Weaver*, 169 F.3d

---

[14]Plaintiff's representation to this court concerning the holding in Hairston is simply inaccurate. Rather than "explicitly refusing to dismiss allegedly false representation," as plaintiff maintains (plaintiff's response, at 17), the *Hairston* court dismissed plaintiff's claim that "all natural" was deceptive and further declined to allow leave to amend, finding amendment to be futile. *Hairston*, at *3-6.

1310, 1319 (11th Cir.1999).   Applying that standard, the Court, in its discretion, finds that leave to amend is not warranted on both of those grounds.   As discussed, there is nothing in the labeling of Florida Natural orange juice that  would in any way deceive a reasonable consumer into believing that the orange juice is question is anything but pasteurized orange juice. No amendment can cure that deficiency. Alternatively and/or additionally, plaintiff's request for leave to amend is denied on the grounds of bad faith. This is plaintiff's counsel's fourth attempt (not counting the arguments before the MDL panel) to pursue a class action against defendant based on the same inherently flawed theory of liability.  Upon not being included as class counsel in the MDL, plaintiff's counsel returned here and went shopping for plaintiffs in an attempt to manufacture a claim which could survive a motion to dismiss.  The court will not participate in the same.

## CONCLUSION

Having considered all of the foregoing, and the pleadings filed to date, the court is of the opinion that the plaintiff lacks standing to pursue a claim against the defendant because the plaintiff has suffered no injury from his purchase of the defendant's orange juice.  Therefore, the court is of the opinion that the defendant's motion to dismiss the plaintiff's second amended complaint (doc. 37) is due to be and will be granted by separate Order.  Because the court finds the multiple attempts to

amend the complaint have been and will continue to be futile, the court will deny the plaintiff's motion to file a third amended complaint (doc. 36), also by separate Order.

**DONE** and **ORDERED** this the 8th day of January, 2013.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE